IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| ARSINIO ROBINSON, | |
| Movant, | CIVIL ACTION NO.: 4:21-cv-144 |
| v. | |
| UNITED STATES OF AMERICA, | (Case No.: 4:19-cr-14) |
| Respondent. | |

**O R D E R**

Movant Anthony Robinson ("Robinson") filed a Motion to Vacate his Conviction and Sentence pursuant to 28 U.S.C. § 2255 motion. (Doc. 98.)[1] For the reasons set forth below, the Court **DENIES** Robinson's Motion, (doc. 51), and **DIRECTS** the Clerk of Court to enter the appropriate judgment and to **CLOSE** this case. Further, the Court **DENIES** Robinson a Certificate of Appealability and *in forma pauperis* status on appeal.

BACKGROUND

The Grand Jury in this District charged Robinson in a one-count indictment charging him with distribution of a controlled substance (cocaine base) in violation of 21 U.S.C. § 841(a). (Doc. 1.) Robinson and his appointed counsel, Mr. Lamar Fields, were able to negotiate a plea agreement whereby Robinson agreed to plead guilty to the charge against him. (Doc. 56.) Through the agreement, the Government agreed not to file a notice of enhancement for a prior conviction pursuant to 21 U.S.C. § 851 and to recommend that Robinson receive a sentence at the low end of

---

[1] The pertinent record documents in this case are filed on the docket of Robinson's criminal case, United States v. Robinson, 4:19-cr-14 (S.D. Ga. Jan. 8, 2019), and many are not included in his civil docket. Thus, for ease of reference and consistency, the Court cites to Robinson's criminal docket in this Order.

the advisory Guidelines range. (Id.) On January 30, 2020, after engaging in a thorough change of plea colloquy with the Court that lasted approximately forty-five minutes, Robinson pleaded guilty to Count One of the Indictment. (Docs. 54, 55, 90.) Following a presentence investigation and report prepared by the United States Probation Office, (doc. 62), Robinson appeared for a sentencing hearing on March 12, 2020, (docs. 75, 93). The Court sentenced Robinson to 151 months' imprisonment and three years' supervised release. (Doc. 76.) Mr. Fields subsequently filed an appeal on Robinson's behalf pursuant to Anders v. California, 386 U.S. 738 (1967), and the United States Court of Appeals concurred with Mr. Fields' assessment and affirmed Robinson's conviction and sentence. (Doc. 95.) Robinson has not filed a Motion to Set Aside his Conviction Pursuant to 28 U.S.C. § 2255. (Doc. 98.)

## DISCUSSION

The Court has reviewed the entirety of Robinson's pleadings and construed his Section 2255 Motions liberally. In these pleadings, Robinson makes a litany of conclusory claims that have no credible basis. He offers many farfetched arguments that seem to circulate throughout the prison system including claims regarding the validity of federal law, the authority and jurisdiction of this Court, and issues of state and commercial law.

A movant is not entitled to habeas relief "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991). "The allegations must be factual and specific, not conclusory. Conclusory allegations are simply not enough to warrant a hearing." Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1061 (11th Cir. 2011) (citing San Martin v. McNeil, 633 F.3d 1257, 1271 (11th Cir. 2011)). For a movant proceeding *pro se*, the court will liberally construe the pleading, but he or she "must suggest (even if inartfully) that there

is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015).  "An evidentiary hearing may be necessary where the material facts are in dispute, but a [movant] is not entitled to an evidentiary hearing when his claims are merely conclusory allegations unsupported by specifics." Pugh v. Smith, 465 F.3d 1295, 1300 (11th Cir. 2006) (citations omitted).  Stated another way, "if a habeas petition does not allege enough specific facts, that if they were true, would warrant relief, the petitioner is not entitled to an evidentiary hearing." Chavez, 647 F.3d at 1060 (citing Allen v. Sec'y Fla. Dep't of Corr., 611 F.3d 740, 763 (11th Cir. 2010)).

Further, because solemn representations at a plea hearing by a defendant, his attorney, and the prosecutor "carry a strong presumption of verity" and "constitute a formidable barrier in subsequent collateral proceedings," a movant's later "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . ." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977) (citing Machibroda v. United States, 368 U.S. 487, 495–96 (1962), and Price v. Johnston, 334 U.S. 266, 286–87 (1948)).  "[I]f the Rule 11 plea–taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986).  The statements of a defendant in open court are presumed to be true.  See United States v. Gonzalez–Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987).  Thus, "[o]nly in the most extraordinary circumstances" will an evidentiary hearing be required to dispose of the later contention that statements made during the change of plea were untruthful." Blackledge, 431 U.S. at 80 n.19.

The Court has reviewed all of Robinson's claims and finds that they rely upon conclusory statements, far reaching allegations, and specious claims about the law that not only are not valid but that have no connection to this case. This provides an independent basis for the denial of

Robinson's Section 2255 Motion. Moreover, the only somewhat cognizant claims he offers are refuted by the undisputed record of evidence in this case. Even if Robinson's statements in his pleadings were true, he is not entitled to relief. Thus, the Court need not hold an evidentiary hearing on his motion. Further, the Court denies Robinson's Motion for the reasons set forth below.

**I.    ROBINSON'S KNOWING, VOLUNTARY, AND INTELLIGENT GUILTY PLEA BARS HIS MOTION.**

After pleading guilty, a defendant can only attack his resulting conviction in "strictly limited" circumstances. Bousley v. United States, 523 U.S. 614, 621 (1998). A Section 2255 challenge to a conviction by guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack." United States v. Broce, 488 U.S. 563, 569 (1989) (finding constitutional that defendant could not raise double jeopardy claim on collateral attack following guilty plea). Pertinently, a "knowing and voluntary guilty plea waives all non–jurisdictional, pre–plea defects, including ineffective assistance of counsel with respect to issues not implicating the voluntariness of the plea." Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) (per curiam).

The "careful and detailed" procedure the Court employed at the Rule 11 hearing entirely refutes Robinson's arguments. During the change of plea hearing, the Court had Robinson placed under oath and engaged in an extensive colloquy that lasted approximately fifty minutes. (Doc. 91.) As part of that colloquy, the Court reviewed Robinson's plea agreement with him and even had him certify his signature on the plea agreement. (Id. at pp. 20—27.) Robinson stated that he had reviewed the plea agreement with Mr. Fields, that he understood what the plea agreement said, and that he understood that by signing the plea agreement and presenting it to the

4

Court he was agreeing to be bound by all its terms and agreeing that all the facts contained in the agreement were true and accurate.  (Id.)  In Robinson's plea agreement, he agreed that "[o]n or about March 7, 2018, in Chatham County, within the Southern District of Georgia, the defendant, Arsinio Robinson, aided and abetted by others known and unknown did knowingly and intentionally distribute a mixture or substance containing a detectable amount to cocaine base ("crack"), a Schedule II controlled substance, all in violation of Title 21 United States Coad, Section 841(a)(1) and Title 18 United States Code, Section 2." (Doc. 56, pp. 1—2.)  Robinson further agreed that,

> No one has promised Defendant that the Court will impose any particular sentence or a sentence within any particular range. The Court is not bound by any estimate of sentence given by Defendant's counsel, the government, the U.S. Probation Office, or anyone else. The Court may impose a sentence up to the statutory maximum. Defendant will not be allowed to withdraw his plea of guilty if he receives a more severe sentence than he expects.

(Id. p. 2.)  Pertinently, through the Plea Agreement, Robinson relayed his understanding of his rights, and he affirmed to the Court his complete satisfaction with Fields's representation and confirmed that he had rendered faithful, skillful, and diligent assistance. (Id. at p. 7—8.)

Particularly given Robinson's sworn statements during his Rule 11 hearing, he cannot credibly argue that his guilty plea was involuntary, unknowing, or unintelligent.  Stitzer, 785 F.2d at 1514 n.4.  During the plea hearing, the Court went to great lengths to make certain that Robinson's guilty plea was a product of his own free choice and made with full knowledge of the consequences of that plea. (Doc. 91.)  He stated that no one had made or forced him to plead guilty or threatened, pressured, forced, or intimidated, him or someone close to him to get him to plead guilty, and no one had leaned on him, bribed, him, or promised him anything to induce his guilty plea. (Id. at p. 30.)  Robinson testified that his decision to plead guilty was voluntary, of his own free will, and knowing and that he was pleading guilty because he was in fact guilty of the charge

against him. (Id. at p. 30—32.) Having carefully observed and questioned Robinson at length, the Court found Robinson competent and able to make important decisions, and Robinson agreed with that assessment. (Id. at p. 9.) Throughout the plea hearing, Robinson was able to converse with the Court, recount personal information, and respond to all the Court's questions, and he repeatedly stated that he understood everything that the Court had said and done during the hearing and that he had no questions of the Court or his counsel. (Id. at pp. 7, 15, 16, 20, 26, 40.) Among other things, the Court apprised Robinson of the rights he would waive if he pleaded guilty, the elements of the crimes with which he was charged, the maximum potential penalties and other consequences he faced if he pleaded guilty. He testified throughout the hearing that he understood the Court's explanations.

Robinson also testified that he had the close assistance of counsel, that he and Mr. Fields had met approximately eight times, and that nothing about his relationship with Mr. Fields was influencing his decision to plead guilty. (Id. at pp. 12—13.) Robinson affirmed that his attorney had met with him sufficiently and discussed the case with him including the discovery against him and his rights. (Id. at pp. 13-14.) Robinson testified that he was satisfied with his attorney's advice and assistance and that he had no complaints about Mr. Fields' representation "whatsoever." (Id. at p. 14.)

The Court also explained to Robinson the penalties associated with the charge to which he was pleading guilty, and Robinson stated that he understood. (Id. at p. 15.) The Court explained that no one could predict his sentence, that all anyone could give him regarding his sentence was an estimate or best guess and that estimate would in no way be binding on the Court. (Id. at pp. 17—18.) Robinson testified that no one had made any promises or guarantees to him regarding what sentence he would receive. (Id.) The Court told Robinson that if he pleaded guilty, the Court

could sentence him to the maximum extent allowed by law just as if he had gone to trial and been found guilty of the charge he was pleading guilty to and that if he received a sentence more harsh than the sentence he thought he was going to get, that would not be grounds for withdrawing his guilty plea. (Id. at p. 19.)

Based on his sworn statements, the Court concluded that Robinson knowingly and intelligently participated in the hearing and that his offer to plead guilty was voluntarily, knowingly, and intelligently made, and Robinson agreed with that assessment. (Id. at pp. 31—32.) At no point during his plea hearing did Robinson indicate in any way that he did not understand the proceedings or the decision he was making. At no point did Robinson indicate that he did not understand the wrongfulness of his actions or that his attorney had failed to fully investigate any issue. Given this extensive colloquy and Robinson's sworn declarations, Robinson cannot now be heard to argue that his plea was unknowing or involuntary. Blackledge, 431 U.S. at 73–74.

The Court must rely upon the truthfulness of Robinson's prior sworn statements when ruling on his Section 2255 Motion. He cannot now come into this Court and argue in direct contradiction to this testimony. Moreover, even if Mr. Fields had misadvised Robinson of his sentencing prospects or his rights prior to the Rule 11 hearing, the Court's careful and detailed procedure during the Rule 11 hearing including the explanation of rights and sentencing procedure would have dissuaded him of those notions and cured any defective advice. See Cruz v. United States, 188 F. App'x 908, 914 (11th Cir. 2006) (affirming dismissal of ineffective assistance claim where movant claimed counsel coerced her into pleading guilty based on misrepresented facts about the case and sentencing given the court's thorough explanation at plea hearing); United States v. Miley, 119 F. App'x 330, 332 (2d Cir. 2005) (holding that any prejudice from defense

7

counsel's alleged misrepresentations was dispelled by the time movant pleaded guilty and acknowledged that no promises had, in fact, been made to him outside of the plea agreement). Thus, the Court finds that Robinson's guilty plea was knowing, intelligent, and counseled and that it forecloses his attack on his conviction. As Robinson has failed to offer an intelligible claim of ineffective assistance of counsel or any other cause for circumventing his guilty plea, the Court finds that his plea bars his Section 2255 Motion and, therefore, **DENIES** his Motion.

## II.  Robinson's Plea Agreement's Collateral Attack Waiver Bars His Attack on His Conviction and Sentence.

Robinson's plea agreement contained a collateral attack waiver that stated, "Defendant entirely waivers his right to collaterally attack her conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion. The only exception is that Defendant may collaterally attack his conviction and sentence based on a claim of ineffective assistance of counsel." (Doc. 56, p. 6.) It is well–settled that a waiver of appeal[2] and collateral attack provisions contained in a plea agreement are enforceable if the waivers are knowing and voluntary. United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008) (citing United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001)). "'To establish the waiver's validity, the government must show *either* that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver.'" United States v. Mottola, 394 F. App'x 567, 568 (11th Cir. 2010) (quoting United States v. Benitez–Zapata, 131 F.3d 1444, 1446 (11th Cir. 1997)). "A waiver of the right to appeal includes a waiver of the right to appeal difficult

---

[2] "Appeal" refers to the right to appeal or contest, directly or collaterally, a sentence. United States v. Bushert, 997 F.2d 1343, 1350 & n.17 (11th Cir. 1993). Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365–67 (N.D. Ga. 2004).

or debatable legal issues—indeed, it includes a waiver of the right to appeal blatant error." United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999). "Waiver would be nearly meaningless if it included only those appeals that border on the frivolous." Brown v. United States, 256 F. App'x 258, 261–62 (11th Cir. 2007).

As set forth above, the Court conducted an extensive colloquy with Robinson that unquestionably established that he was pleading guilty knowingly and voluntarily and with the close assistance of counsel. (Doc. 91.) The Court reviewed his plea agreement with him even having him certify his signature and initials and having the AUSA summarize the agreement, and Robinson confirmed the accuracy of that summary. (Id. at pp. 20—26.) Robinson stated that he had authorized Mr. Johnson to negotiate the plea agreement on his behalf, that he had read "every word" of his plea agreement before she signed it, that Mr. Fields had answered any questions that he might have about the plea agreement, and that he was confident that he understood what his plea agreement said and what it means. (Id.) Moreover, the Court took pains to explain the plea agreement's collateral attack waiver to Robinson and he stated that he understood the waiver and that he wanted to waive his collateral attack rights with one limited exception for ineffective assistance of counsel as part of his plea bargain from the United States, and that he had no questions about the waiver at all. (Id. at pp. 25—26.)

When a defendant enters a guilty plea during a Rule 11 proceeding, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary. Gonzalez–Mercado, 808 F.2d at 800 n.8. Moreover, it "manifestly clear" from the record, including the extensive plea colloquy and the plea agreement itself that Robinson fully understood the significance of his plea agreement's collateral attack waiver. Looking at the entirety of the record and taking Robinson at his word during her Rule 11 hearing, he fully

understood that he waived his collateral attack rights through his plea agreement as part of his plea bargain with the United States.

As Robinson's collateral attack waiver was undoubtedly valid, the Court turns to the question of whether the waiver covers Robinson's attack on his conviction. The only exception to Robinson's collateral attack waiver is for claims of ineffective assistance of counsel. However, he raises far reaching claims throughout his Motion that are difficult to decipher and that sound in all manner of theories with no plausible factual or legal basis. Many of these claims do not sound in ineffective assistance of counsel. Those claims are undeniably barred by Robinson's collateral attack waiver. Thus, this provides yet another reason that the Court **DENIES** those portions of his Section 2255 Motion.

### III.   ROBINSON'S SECTION 2255 ARGUMENTS FAIL ON THE MERITS.

Regardless of whether Robinson's claims are barred by his guilty plea and his collateral attack waiver, the Court still rejects them as entirely without merit. As an initial matter, Robinson's claims that do not sound in ineffective assistance of counsel are entirely baseless and grounded in entirely inaccurate legal theories. Thus, the Court rejects those claims. For the reasons set forth below, the Court also rejects his claims of ineffective assistance of counsel.

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings. Strickland v. Washington, 466 U.S. 668 (1984). This right extends to the entry of a guilty plea, Hill v. Lockhart, 474 U.S. 52, 58 (1985), and during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001). A defendant's guilty plea, appeal waiver, or collateral attack waiver does not preclude an ineffective assistance of counsel claim premised on an involuntary and unintelligent plea. United States v. Puentes–Hurtado, 794 F.3d 1278, 1281, 1285 (11th Cir. 2005).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 466 U.S. at 686. A convicted defendant must meet two components to establish that counsel's assistance was so defective as to require reversal of a conviction or sentence: (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. Id. at 685–86. "If a petitioner cannot satisfy one prong, we need not review the other prong." Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014). Thus, if a defendant cannot show prejudice, the Court need not determine whether defendant's allegations show his counsel's performance fell below an objective standard of reasonableness.

The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56. There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686). "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (second alteration in original)). "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. Further, retrospective judicial scrutiny of counsel's performance "must be highly deferential" and must "eliminate the distorting effects of hindsight." Id. at 689. "In evaluating performance, 'counsel is strongly

11

presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690). "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant could obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92. "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." LeCroy, 739 F.3d at 1312 (internal citation omitted). "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." Id. at 1312–13. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). A reasonable probability of a different result "is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Robinson has failed to demonstrate: (1) that Mr. Fields's performance was deficient, i.e., the performance fell below an objective standard of reasonableness; or (2) that Robinson suffered prejudice because of that deficient performance. Id. at 685–86. A Section 2255 movant asserting an ineffective assistance of counsel claim in the guilty plea process must establish that counsel's performance was deficient (i.e., professionally unreasonable) and that the deficient performance "affected the outcome of the plea process." Hill, 474 U.S. at 59. In other words, to establish prejudice, the movant "must show that there is a reasonable probability that, but for counsel's

errors, he would . . . have pleaded [not] guilty and would . . . have insisted on going to trial." Id.; see also Slicker v. Wainwright, 809 F.2d 768 (11th Cir. 1987) (to be entitled to an evidentiary hearing on whether petitioner's lawyer incorrectly advised petitioner that the negotiated plea agreement provided that he would serve less time than the maximum penalty, petitioner was required to establish that he would not have pleaded nolo contendere and would have insisted on going to trial had his lawyer not misled him with faulty information).

Further, a mere allegation by a defendant that he would have insisted on going to trial but for counsel's errors, although required, is insufficient to establish prejudice. Rather, "the court must look to the totality of the objective factual circumstances surrounding the plea in order to determine whether there is a reasonable probability that the [movant] would in fact have insisted on trial." Suarez v. United States, No. 15–CR–20144, 2017 WL 3208725, at *5 (S.D. Fla. June 19, 2017), *report and recommendation adopted*, No. 16–24003–CIV, 2017 WL 3206328 (S.D. Fla. July 27, 2017) (citing Hill, 474 U.S. at 59; Hutchings v. United States, 618 F.3d 693, 697 (7th Cir. 2010)). This inquiry will often include an assessment of the strength of the prosecution's case, any available defenses the movant could have asserted at trial, the plea colloquy, and the movant's potential sentencing exposure. Id.

It appears that Robinson contends that Mr. Fields failed to consult with him regarding the rights he would waive by pleading guilty and that Mr. Fields advised him that he would face a particular sentence if he pleaded guilty. However, as set forth above, Robinson's plea agreement and his sworn testimony before this Court entirely refutes these claims. Robinson also alludes to an argument that Mr. Fields should have challenged the indictment or filed a motion to suppress. However, he offers no plausible theory on which Mr. Fields could have challenged the Indictment or the evidence against him. To the extent that Robinson complains that Mr. Fields would risk not

receiving a reduction in his advisory sentencing range under the United States Sentencing Guidelines for acceptance of responsibility if he filed a motion to suppress or otherwise contested the charges, this would not have necessarily been deficient advice.[3]  In some circumstances, statements made in support of a motion to suppress have been found to result in a loss of acceptance of responsibility.  See United States v. Silva, 865 F.3d 238, 245 (5th Cir. 2017) (affirming district court's decision to deny defendant additional reduction under Section 3E1.1(b)because defendant's motion was based on a false claim that forced the government and the district court to allocate resources they would not have been required to allocate); United States v. Knight, 562 F.3d 1314, 1328 (11th Cir. 2009)(affirming denial of reduction for acceptance of responsibility where defendant only stipulated to elements of his crime after moving to suppress evidence against him).

Moreover, Robinson has failed to show any prejudice from Mr. Fields's advice.  Robinson does not deny that the prosecution had more than ample evidence to prove that he distributed crack cocaine.  Moreover, the facts of this case set forth in the factual proffer by the AUSA at the change of plea hearing were quite damning including the fact that the Government's investigation had produced a video recording of Robinson participating in a sale of cocaine to the confidential informant.  (Doc. 91, p. 28—29.)  Robinson testified that he did not materially disagree with anything in the AUSA's proffer, and when the Court asked Robinson to describe what he did in his own words, he said, "sales of cocaine."  (Id. at pp. 29—30.)  Further, the facts set forth in the Presentence Investigation Report are quite damning.  (Doc. 62, ¶¶ 4—11.)  He has not offered any

---

[3] Under the Sentencing Guidelines, a defendant's offense level is decreased by two levels if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a).  Additionally, the Government may move for an additional one level reduction if "the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." U.S.S.G. § 3E1.1(b).

defenses that have any basis in law whatsoever much less a potentially meritorious argument. The Court conducted an extensive plea colloquy with Robinson that solidified that there was a factual basis for his plea of guilty and that he was pleading guilty knowingly, voluntarily, and intelligently. Further, Robinson reduced his advisory sentencing range under the United States Sentencing Guidelines through the acceptance of responsibility in his plea agreement. (Id. at ¶¶ 14, 24, 25.) Moreover, had the Government filed a Section 845 enhancement, which it agreed not to do through the plea agreement, Robinson's maximum sentence would have increased by ten years due to his prior convictions for felony drug offenses. 21 U.S.C. § 841(b)(1)(C). Therefore, his base offense level would have increased to 34, and his total offense level would have been 31 rather than 29. U.S.S.G. § 4B1.1; (see also, doc. 62, ¶¶ 23—26.) This would have resulted in a Guideline range of 188-235 months' imprisonment, rather than 151-188 months. U.S.S.G. Ch. 5, Pt. A. Thus, Robinson greatly reduced his sentencing exposure by pleading guilty. Consequently, having reviewed the totality of the objective factual circumstances surrounding Robinson's plea, the Court determines that there is not a reasonable probability that an objective defendant in Robinson's position would have insisted on trial. Consequently, Robinson has failed to show that Mr. Fields' advice caused him any prejudice.

### III. ROBINSON IS NOT ENTITLED TO LEAVE TO APPEAL *IN FORMA PAUPERIS* OR A CERTIFICATE OF APPEALABILITY.

The Court also denies Robinson leave to appeal *in forma pauperis* and a Certificate of Appealability. Though Robinson has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. Pursuant to Rule 11 of the Rules Governing Section 2255 Cases, "the district court must issue or deny a certificate of appealability when it issues a final order adverse to the applicant." (Emphasis supplied); see also Fed. R. App. P.

24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when she seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Robinson, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller–El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the

16

petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller–El, 537 U.S. at 336.

Based on the above analysis of Robinson' pleadings and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal. Therefore, the Court **DENIES** the issuance of a Certificate of Appealability. Robinson is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non–frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court likewise **DENIES** Robinson *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Robinson's Section 2255Motion, (doc. 98), and **DIRECTS** the Clerk of Court to enter the appropriate judgment and to **CLOSE** this case. Further, the Court **DENIES** Robinson a Certificate of Appealability and *in forma pauperis* status on appeal.

**SO ORDERED**, this 27th day of May, 2022.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA